<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>*Plaintiff*,<br><br>v.<br><br>MICHAEL NOACK,<br><br>*Defendant*. | Crim. No.: 18-425  (KSH)<br><br><br><u>**OPINION**</u> |

**I.      Introduction**

Defendant Michael Noack seeks a reduction in sentence under the First Step Act, 18 U.S.C. § 3582(c)(1)(A), citing as grounds his desire to serve as a caregiver to his mother.  The government opposes.  For the reasons set forth below, the Court will deny the motion.

**II.      Background**

On July 24, 2018, Noack pleaded guilty to a one-count information charging him with knowingly using and/or carrying a firearm in relation to a drug trafficking offense.  (D.E. 27, Judgment; D.E. 21, Plea Agmt.)  His plea agreement, which was made pursuant to Fed. R. Crim. P. 11(c)(1)(C), provided for a 10-year stipulated sentence.[1]  The Court accepted the plea and imposed a 10-year sentence to run consecutive to any state sentence he was then serving, followed by 5 years of supervised release.  (D.E. 27, Judgment.)  Noack's anticipated release date is September 3, 2028.  (BOP, Inmate Locator, BOP Registration No. 71363-050, https://www.bop.gov/inmateloc/ (last visited May 15, 2025).)

---

[1] The guidelines range was 262 to 327 months due to Noack's career offender status.  (PSR ¶ 89.)

On June 16, 2023, Noack filed a motion under 18 U.S.C. § 3582(c)(1)(A), seeking immediate release on several grounds: his mother's needs; his efforts at rehabilitation while incarcerated; and the harsh conditions of confinement occasioned by COVID-19 and how the Bureau of Prisons (BOP) responded to it.  (D.E. 32.)  Attached to Noack's motion was a letter from his mother that, *inter alia*, describes her heart and lung conditions and states that her other two children have cancer and as such are limited in their ability to help care for her.  (D.E. 32-1 at 2.)  Noack also submitted a separate letter describing programming he has completed and his pursuit of vocational skills and efforts at personal growth and development; that letter went into greater detail on his family circumstances.  (D.E. 34.)  Also offered in support are two letters from fellow inmates -- one describing Noack as remorseful about his offense, invested in his efforts to develop vocational skills, and concerned about caring for his mother; and the other describing Noack as a "standup individual" who is looked up to by others.  (D.E. 35, 36.)

The Office of the Federal Public Defender filed an appearance on behalf of Noack, and subsequently filed a motion under § 3582(c)(1)(A) that supplemented the legal and factual basis supporting Noack's arguments.  (D.E. 44.)  The government opposed, arguing that Noack failed to establish an extraordinary and compelling reason for release and that the relevant sentencing factors under 18 U.S.C. § 3553(a) do not favor relief.  (D.E. 48.)  Noack, through his federal public defender, filed a reply reiterating his arguments.  (D.E. 49.)

## III.    Discussion

### A.  Compassionate Release Generally

Pursuant to 18 U.S.C. § 3582(c)(1)(A), "district courts may reduce a term of imprisonment when warranted by 'extraordinary and compelling reasons,'" and if the Court finds that such reasons exist, "it then turns to the sentencing factors in 18 U.S.C. § 3553(a) to

determine whether compassionate release is appropriate." *United States v. Stewart*, 86 F.4th 532, 533 (3d Cir. 2023); *see also United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021). The defendant bears the burden of proving, by a preponderance of the evidence, that extraordinary and compelling reasons exist to justify his compassionate release. *United States v. Taylor*, 2024 WL 3594315, at *2 (D.N.J. July 31, 2024) (O'Hearn, J.) (citation omitted). Even if the defendant makes such a showing, "[c]ompassionate release is discretionary, not mandatory; therefore, even if a defendant is eligible for it, a district court may deny compassionate release upon determining that a sentence reduction would be inconsistent with the § 3553(a) factors." *United States v. Alexander*, 2023 WL 4198042, at *1 (3d Cir. June 27, 2023). A reduction in sentence also must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

Before the Court can consider a defendant's motion under § 3582(c)(1)(A), the defendant must fully exhaust administrative remedies within the BOP or wait 30 days from the date the facility's warden receives the request, whichever comes first. *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020). Noack states that he submitted a request for compassionate release on February 18, 2023, and attached a copy of the request. (D.E. 32-1 at 1.) The government concedes that Noack exhausted his administrative remedies. (D.E. 48 at 3.) Accordingly, the substance of Noack's motion is properly before the Court.

**1. Extraordinary and Compelling Reasons**

The phrase "extraordinary and compelling reasons" is not defined by statute, but the relevant policy statement, found at U.S.S.G. § 1B1.13, provides these reasons exist in several enumerated circumstances or a combination thereof. At the time Noack was sentenced, the policy statement (which was not then directly applicable to defendant-initiated compassionate

3

release motions but was still considered persuasive authority in ruling on them, *see Andrews*, 12
F.4th at 260; *United States v. Jefferson*, 2021 WL 4279626, at *2 (3d Cir. Sept. 21, 2021)), did
not include parental caregiving as a basis for relief.  *See United States v. Dunich-Kolb*, 2020 WL
6537386, at *7 (D.N.J. Nov. 5, 2020) (McNulty, J.).

Effective November 1, 2023, however, the policy statement was revised as part of a
broader package of amendments to the guidelines.  The changes included moving the discussion
of what constitutes "extraordinary and compelling reasons" (including the definition of
qualifying "family circumstances" and the catchall category) from the application notes to the
text of the policy statement, and expanding certain grounds, including the "family
circumstances" section.  Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28254,
28254-55 (May 3, 2023); *see also United States v. Tobolsky*, 2024 WL 323476, at *2 (D.N.J. Jan.
29, 2024) (Hillman, J.) (discussing amendments).  Currently, the policy statement provides that
as concerns a defendant's family circumstances, "extraordinary and compelling reasons exist" in
the event of:

(A) The death or incapacitation of the caregiver of the defendant's minor child or
the defendant's child who is 18 years of age or older and incapable of self-
care because of a mental or physical disability or a medical condition.

(B) The incapacitation of the defendant's spouse or registered partner when the
defendant would be the only available caregiver for the spouse or registered
partner.

**(C) The incapacitation of the defendant's parent when the defendant would
be the only available caregiver for the parent.**

(D) The defendant establishes that circumstances similar to those listed in [A
through C] exist involving any other immediate family member or an
individual whose relationship with the defendant is similar in kind to that of
an immediate family member, when the defendant would be the only
caregiver for such family member or individual.  For purposes of this
provision, 'immediate family member' refers to any of the individuals listed in

4

> paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S. Sent'g Guidelines Manual § 1B1.13(b)(3)(A)-(D) (policy statement) (U.S. Sent'g Comm'n 2023) (emphasis added).  The policy statement, like its predecessor, contains a catchall provision, which now states that extraordinary and compelling reasons exist if the defendant "presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in [the preceding paragraphs, which include the family circumstances enumerated above], are similar in gravity to those described [in the preceding paragraphs]."  *Id.* § 1B1.13(b)(5).

The Third Circuit has stated that the 2023 guideline amendments are not retroactive. *United States v. Kramer*, 2024 WL 313389, at *1 n.3 (3d Cir. Jan. 26, 2024).  That would, at first glance, appear to preclude the Court from considering the medical conditions of Noack's mother, as only the amended version expands to include family members beyond the defendant's spouse and own minor child.  U.S.S.G. § 1B1.13(b)(3)(C)-(D) (2023).  The Court declines to take that unduly narrow path.  The pre-2023 policy statement's catchall category permits the Court to look more broadly in considering what is "extraordinary and compelling," and courts have cited it in looking to family members beyond the types specifically cited in the policy statement. *See, e.g.*, *United States v. Jones*, 2021 WL 1060218, at *10 (W.D. Pa. Mar. 18, 2021) (considering care needs of defendant's mother under catchall).

Moreover, as Chief Judge Brann of the Middle District of Pennsylvania recently concluded in ruling on a compassionate release motion filed before the amendments' effective date but decided after it,

> failing to account for the 2023 Sentencing Guidelines (or denying a motion that would be meritorious under those Sentencing Guidelines but not under earlier Sentencing Guidelines) would be a waste of judicial resources and would not be

in the interests of justice.  Such a denial would only delay consideration of [defendant's] claims, as he could simply file a new motion for compassionate release immediately after the denial of this motion.  Therefore, the Court will also consider whether [defendant's] motion is meritorious under the 2023 Sentencing Guidelines.

*United States v. Edmond*, 2024 WL 1684889, at *4 (M.D. Pa. Apr. 18, 2024).

Accordingly, the Court considers the amended guidelines, which while more expansive still require the defendant to be the only available caregiver for the parent, and for the parent to be incapacitated.

In considering what qualifies as "incapacitation," courts have looked to the BOP's own guidelines, which define the term as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the [family member] . . . is completely disabled," such that the individual "cannot carry on any self-care and is totally confined to a bed or chair."  BOP Program Statement § 5050.50; *see United States v. Walker*, 2024 WL 580152, at *3 (D.N.J. Feb. 13, 2024) (Shipp, J.); *United States v. Doolittle*, 2020 WL 4188160, at *2-3 (D.N.J. July 21, 2020) (Chesler, J.).  Further, a defendant seeking compassionate release on this basis must provide "a statement and verifiable medical documentation regarding the [family member's] incapacitation, a statement and letters of documentation that the inmate is the only family member capable of caring for the [incapacitated family member], and a statement and documentation regarding the inmate's release plan."  *United States v. Ali*, 2022 WL 3357915, at *3 (D.N.J. Aug. 15, 2022) (Hillman, J.) (quoting *Doolittle*, 2020 WL 4188160, at *3).

Noack alleges that his mother is primarily confined to a wheelchair, requires oxygen assistance, and cannot perform daily activities or leave the house without a family member's assistance.  (D.E. 44 at 3-4.)  He submits her medical records from New Jersey Cardiology

Associates which confirm that she is being treated for significant heart and lung conditions and has been hospitalized for these conditions in the past. (*See* D.E. 47.)

The Court finds that Noack's mother fits the bill for incapacitation under the BOP guidelines but is hard-pressed to find that Noack could provide appropriate care, or that he is the only available caregiver. Courts in this district have denied compassionate release in this context "in the absence of strong evidence the petitioner is the *sole* individual capable of caring for the parent." *United States v. Bailey*, 2025 WL 45687, at *4 (D.N.J. Jan. 8, 2025) (O'Hearn, J.) (quoting *United States v. Striganivicz*, 2023 WL 4868100, at *2 (E.D. Pa. July 31, 2023)); *see United States v. Everett*, 2021 WL 322182, at *2 (W.D. Pa. Feb. 1, 2021) ("[W]hile the Court is sympathetic to the added burden of caring for an elderly parent" while caring for special needs children, "nothing in the record suggests that [the defendant's] siblings cannot provide assistance to his mother or obtain outside nursing care on her behalf."); *United States v. Milchin*, 2023 WL 7544995, at *1 (E.D. Pa. Nov. 13, 2023) ("[A]lthough [the defendant's] brother allegedly has had no contact with the family, this does not make him permanently 'unavailable.'").

Critically, the information in his Presentence Report shows that Noack has been in and out of custody his entire adult life. In 2002, when he was 18 years old, he was charged by the State of New Jersey with aggravated assault. (PSR ¶ 32.) Initially he was sentenced to three years' probation, but after multiple violations, including a terroristic threats conviction that extended his probation, he was resentenced to 5 years' incarceration in March 2006. (*Id.* ¶¶ 32-33.) Noack was released on parole on June 5, 2008. (*Id.*) Five months later, on November 25, 2008, he violated by unlawfully possessing a gun, and on December 22, 2008, he was convicted in state court on robbery charges and sentenced to ten years' incarceration. (*Id.* ¶¶ 36-37.) He was released on parole on June 11, 2017, only to commit the instant offense five months later on

November 16, 2017.  (*Id.* ¶¶ 37, 45.)  Since 2008, it appears that Noack has only been at liberty for approximately 10 months.

Noack does not submit any evidence that he will be able to manage his mother's care, a serious and difficult undertaking under the best of circumstances.  He also does not indicate that he cared for his mother in the past.  *Cf. United States v. Dunich-Kolb*, 2022 WL 580919, at *9 (D.N.J. Feb. 14, 2022) (McNulty, J.) (finding significant that the defendant "is not merely promising to fulfill the role of caretaker in the future," since "[b]efore his incarceration, he resided in his parents' home and cared for them").  Noack fails to make his case for compassionate release on this basis.

His other grounds—his rehabilitation efforts and the harsh conditions he experienced during the pandemic—also fail.  (D.E. 44 at 11.)  Noack submits that he is free of infractions, has completed training in electrical services, and works in the prison as an electrician.  (D.E. 32 at 6; D.E. 44 at 14.)

As to a defendant's rehabilitation efforts, the policy statement provides:

> Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

U.S.S.G. § 1B1.13(d).  And as stated above, the catchall provision in U.S.S.G. § 1B1.13(b)(5) allows the Court to consider "any other circumstances" "similar in gravity" to those explicitly laid out in the policy statement.

The Court cannot find that Noack's commitment to rehabilitation programs and training and his compliance with the regulations are extraordinary.  He further argues that his confinement has been unusually harsh due to the prison's response to COVID-19, which justifies

a reduction in his sentence.  (D.E. 32 at 3-5; D.E. 44 at 15-16.)  But were those circumstances, harsh and difficult as he describes them, and his compliance with the programs and protocol of prison life deemed extraordinary then all defendants who were incarcerated during the pandemic who have bettered themselves with prison programs and have remained infraction free could successfully apply for compassionate release, something never contemplated by 18 U.S.C. § 3582.

### 2.  Section 3553(a) Factors

Under 18 U.S.C. § 3553(a), a court must impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing, including the need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," afford adequate deterrence, protect the public from additional crimes by the defendant, and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(2)(A)-(D).  The court must also consider the "nature and circumstances of the offense and the history and characteristics of the defendant" and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," among other factors.  *Id.* § 3553(a)(1), (6).

Because the Court has denied compassionate release on extraordinary and compelling grounds, it need not assess the § 3553(a) factors.  Nonetheless, Noack's past offenses make this appropriate.  According to the Presentence Report, his sentencing exposure was 262 to 327 months.  (PSR ¶ 89.)  The stipulated sentence of ten years clearly spared him far longer time in prison.  When accepting and imposing that term of 120 months, the Court stated:

> that the ten year sentence will provide adequate punishment for what may appear
> to be a simple straightforward crime, a small amount of drugs, but the carrying of

the gun in the face of everything is precisely what [the prosecutor] was talking about, the serious, serious crime.  And Mr. Noack has been doing this for many, many, years, more than half of his life.  So a substantial sentence is required.

(D.E. 31, Sent'g Tr. at 19:22-20:3.)

The Court found that "protection of the public" was "probably the strongest piece of the sentencing algorithm that we are given" under § 3553(a).  Early release directly contradicts that concern.

**IV.    Conclusion**

For the reasons set forth above, Noack's motion is denied.  An appropriate order will issue.


Dated:  May 16, 2025                                  */s/ Katharine S. Hayden*_____
                                                    Katharine S. Hayden, U.S.D.J.